PUERTO RICO
FARM CREDIT, ACA

MORTGAGE NOTE PLEDGE AND SECURITY AGREEMENT

This MORTGAGE NOTE PLEDGE AND SECURITY AGREEMENT (the "Agreement"), is entered as of February 12, 2021, by and between:

**ALBERTO DAPENA DEL VALLE**, of legal age, single, merchant and resident of San Juan, Puerto Rico; (hereinafter referred to each as "Borrower" and jointly as the "Borrower"); and

**PUERTO RICO FARM CREDIT, ACA**, a loan cooperative association and instrumentality of the United States of America, organized and operating pursuant to the laws of the United States Congress, known as the "Farm Credit Act of 1971", as amended, with offices located in San Juan, Puerto Rico, herein represented by its Authorized Officer, **JORGE ALFONSO DULZAIDES GONZÁLEZ**, of legal age, married, banker and resident of Trujillo Alto, Puerto Rico, (hereinafter, "PRFC").

WITNESSETH:

WHEREAS, PRFC has entered into a Loan Agreement with Borrower dated as of the date hereof (as be amended or otherwise modified from time to time, the "Loan Agreement"), by which Borrower were granted the following Credit Facility: Term Loan #01204585-10 in the principal amount of **ONE HUNDRED EIGHTY ONE THOUSAND NINE HUNDRED DOLLARS ($181,900.00)** to complete the purchase of a 9.50 "cuerdas" farm that has dwelling, which will be his primary house (hereinafter referred jointly as the "Credit Facilities" or "Loans").

WHEREAS, as a condition precedent to concede the Credit Facilities to the Borrower under the Loan Agreement, the Borrower has agreed to constitute this pledge and grants a lien and security interest contemplated by this Agreement in favor of PRFC;

NOW, THEREFORE, in consideration of the premises and the agreements herein, the Borrower hereby agree with PRFC as follows:

Section 1. Definitions. Reference is hereby made to the Loan Agreement for a statement of the terms thereof. All capitalized terms used herein that are not otherwise defined shall have the meanings set forth in the Loan Agreement.

Section 2. Pledge, Assignment and Grant of Security Interest. *The Borrower* hereby delivers, pledges and assigns, and grants to PRFC a continuing Lien on and security interest in the Mortgage Note(s) described in Schedule I hereto (the "Mortgage Note(s)") that is (are) secured by the Mortgage(s) described in said Schedule I (the "Mortgage(s)") on the real property owned by **ALBERTO DAPENA DEL VALLE** and further described in the Mortgage(s) (the "Mortgaged Property"), and all extensions, modifications, settlements, renewals, accessions, substitutes and replacements of, and all additions and appurtenances to, any of the foregoing, and all proceeds of any of the foregoing, including without limitation, all cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for the Mortgage Note(s), and all cash and non-cash proceeds derived therefrom or from the enforcement thereof or of the Mortgage or other security therefor (tangible or intangible, whether now or hereafter existing) (collectively, the "Collateral").

Section 3. Security for Obligations. This Agreement secures the payment and performance of all obligations of every kind and character now or hereafter existing (whether matured or unmatured, contingent or liquidated) of the Borrower and each other Loan Party under the Loan Agreement, the Note and each other Loan Documents (including, without limitation, this Agreement), in each case as such agreements or instruments have been or

may hereafter be amended or otherwise modified from time to time, whether for principal, interest (including, without limitation, all interest accruing or payable at the then applicable rate provided in the Loan Agreement after the maturity of the Credit Facilities and interest accruing or payable at the then applicable rate provided in the Loan Agreement or other applicable agreement after the filing of any petition in bankruptcy or the commencement of any insolvency, reorganization or like proceeding, relating to any Loan Party), fees, expenses, fixed or variable amounts, reimbursement, indemnification or otherwise (all such obligations being the "Obligations"). Without limiting the generality of the foregoing, this Agreement secures the payment of all amounts that constitute part of the Obligations and would be owed by any Loan Party to PRFC under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar case or proceeding involving any Loan Party.

Section 4. Representations and Warranties. The Borrower represents and warrants PRFC as follows:

(a) The Mortgage(s) constitutes duly perfected, valid first-priority mortgage Lien, effective as of the date of filing for recordation, upon the Mortgaged Property referred to therein.

(b) All mortgage recording taxes, documentary fees, stamp taxes, and other taxes, fees and expenses required to be paid in connection with the execution and recording of the Mortgages have been or are being paid in full.

(c) The exercise by PRFC of any of its rights and remedies hereunder in accordance with the terms of this Agreement will not contravene any law or any contractual restriction binding on or affecting the Borrower or any of its properties and will not result in or require the creation of any Lien, security interest or other charge or encumbrance upon or with respect to any of its properties except the pledge and security interest created hereby.

(d) ALBERTO DAPENA DEL VALLE is and will be at all times the sole beneficial and legal owner of the Mortgage Note(s) and the other Collateral free and clear of any Liens or other charges or encumbrances or rights of third parties except for Permitted Liens.

(e) The Mortgage Note(s) is secured by, and is entitled to the benefits of, the Mortgage.

(f) ALBERTO DAPENA DEL VALLE is the owner of record, with valid, good and marketable fee simple (pleno dominio) title to the Mortgaged Property, free and clear of all Liens and rights of third parties, except as expressly set forth in the Mortgage(s) and except for Permitted Liens.

(g) This Agreement creates a valid Lien and security interest in favor of PRFC in the Mortgage Note(s) and other Collateral, as security for the Obligations. The Lender's possession of the Mortgage Note(s) under this Agreement results in the perfection of such Lien. Such Lien constitutes a perfected first priority Lien in the Mortgage Note(s) and the other Collateral, subject to Permitted Liens. All actions necessary to perfect and protect such Lien have been duly taken.

Section 5. Covenants as to the Collateral and Mortgaged Property. Without limitation of the covenants of the Borrower set forth in the Loan Agreement, for so long as the Credit Facility shall remain unpaid:

(a) The Borrower will, at its sole expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further actions that PRFC may reasonably deem necessary or desirable in order to perfect and

protect the Liens purported to be created hereby and by the Mortgage(s); to enable PRFC to enforce its rights and remedies hereunder and under the Mortgage(s) in respect of the Mortgage Note(s), the other Collateral and the Mortgaged Property; and to otherwise effect the purposes of this Agreement and the Mortgage(s), including without limitation, executing and filing such other instruments, documents and/or amendments hereto or thereto as PRFC may deem reasonably necessary in order to perfect and preserve the Liens purported to be created hereby and by the Mortgage(s).

(b) The Borrower will comply with all federal, Puerto Rico and local laws and regulations affecting the Mortgaged Property, the Mortgage Note(s) and the Mortgage(s), except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

(c) Except for the Lien and security interest created hereby, the Borrower will not (i) assign, exchange or otherwise dispose of the Mortgage Note(s) or any of the other Collateral or any interest therein or attempt, offer or contract to do so, or (ii) create or suffer to exist any Lien or security interest upon or with respect to the Mortgage Note(s) or any of the other Collateral, except for Permitted Liens.

(d) The Borrower shall, immediately on demand therefor by the Lender, deliver to PRFC any and all evidence of ownership of the Mortgage Note(s), the other Collateral and the Mortgaged Property.

(e) The Borrower will not take or fail to take any action that would in any manner impair the value or enforceability of the Lender's Lien and security interest in the Mortgage Note(s), the other Collateral or the Mortgaged Property.

(f) The Borrower shall, at its sole expense, maintain the Mortgaged Property insured by such insurance companies, in such amounts, covering such loss, damage and risks and in such form and manner as are required of the Borrower under the Loan Agreement.

Section 6. <u>Foreclosure of Mortgage</u>.

(a) Except upon indefeasible payment in full in cash of all of the Obligations, no repayment or prepayment of all or any portion of the Obligations shall cause, give rise to a right to require, or otherwise result in, the release, in whole or in part, of the Lien of, or a reduction in the amount of, any Collateral or any part of the Mortgaged Property.

(b) If any of the Mortgage(s) is foreclosed, all or any part of the Mortgaged Property, or any interest therein, may, at the discretion of the Lender, be sold. PRFC reserves the right to foreclose any of the Mortgage(s), at the sole discretion of the Lender, upon the occurrence and during the continuance of an Event of Default. The Borrower waives and releases any right to have the Mortgaged Property marshaled.

Section 7. <u>Further Assurances</u>.

(a) The Borrower agrees that, from time to time at the expense of the Borrower, the Borrower will promptly execute and deliver all further instruments and documents, and take all further action, that may be reasonably necessary or desirable, or that PRFC may reasonably request, in order to perfect and protect any Lien and security interest granted or purported to be granted hereby or to enable PRFC to exercise and enforce its rights and remedies hereunder with respect to the Mortgage Note(s) or any other Collateral. Without limiting the generality of the foregoing, the Borrower will: (i) execute and file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary, or as PRFC may request, in order to perfect and preserve the security

interest granted or purported to be granted hereby, and (ii) at the Lender's request, appear in and defend any action or proceeding that may affect the Borrower's title to, or the Lender's Lien and security interest in, all or any part of the Collateral.

(b) The Borrower hereby authorizes PRFC to file one or more financing or continuation statements, and amendments thereto, relating to all or any part of the Collateral without the signature of the Borrower where permitted by law. A photocopy or other reproduction of this Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

Section 8. Lender Appointed Attorney-in-Fact. The Borrower hereby irrevocably appoints PRFC as the Borrower's attorney-in-fact and proxy, with full authority in the place and stead of the Borrower and in the name of the Borrower or otherwise, from time to time in the Lender's discretion upon the occurrence and during the continuance of an Event of Default, to take any action and to execute any instrument that PRFC may deem necessary or advisable to accomplish the purposes of this Agreement including, without limitation, (i) to pay taxes, assessments or other charges or claims that PRFC in good faith believes to be then due with respect to the Mortgage Note(s), the other Collateral or the Mortgaged Property; (ii) to ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipt for moneys, claims and other amounts due and to become due under or in respect of the Mortgage Note(s), the other Collateral or the Mortgaged Property; (iii) to file any claims or take any action or institute or defend any proceedings which PRFC may deem necessary or desirable for the collection of the Mortgage Note(s) or the other Collateral or otherwise to enforce the rights of PRFC with respect to the Collateral; (iv) to settle, compromise or adjust any suit, action or proceeding described in clause (iii) above and, in connection therewith, to give such discharges or releases as PRFC may deem appropriate; (v) to set off or cause to be set off amounts in any account maintained with any Lender or otherwise enforce rights against any of the Collateral in the possession of the Lender; and (vi) generally, to sell, transfer, pledge and make any agreement with respect to, or otherwise deal with, any of the Collateral as fully and completely as though PRFC were the absolute owner thereof for all purposes, and to do, at the Lender's option and the Borrower's expense, at any time from time to time, all acts and things which PRFC deems necessary to protect, preserve or realize upon the Collateral and the Lender's Lien thereon and to effect the intent of this Agreement, all as fully and effectively as the Borrower might do. The Borrower hereby ratifies and approves all acts of the attorney-in-fact other than those constituting acts of gross negligence or willful misconduct. PRFC shall not be liable for any losses or liabilities resulting from any acts or omissions or any error of judgment or mistake of fact or law, except those losses or liabilities as are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the gross negligence or willful misconduct of the Lender.

Section 9. Lender May Perform. If the Borrower fails to perform any agreement contained herein within ten (10) days after written notice from the Lender, PRFC may itself perform, or cause the performance of, such agreement or obligation, and the reasonable expenses of PRFC incurred in connection therewith shall be payable by Borrower pursuant to Section 12 hereof, together with interest thereon at the default rate specified in the Loan Agreement as the default rate for the Note(s), and shall constitute Obligations secured hereby and by the other Loan Documents; provided, however, that if PRFC deems it necessary (in its reasonable judgment) to perform any agreement or obligation contained herein prior to such ten (10) day period in order to protect (i) the Lien constituted pursuant hereto or (ii) the Collateral from damage or loss, then such ten (10) day written notice to Borrower shall not be required and PRFC may perform such agreements and obligations without written notice to the Borrower.

Section 10. The Lender's Duties . The powers conferred on PRFC under this Agreement are solely to protect the interest of PRFC in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Collateral

in its possession and the accounting for monies actually received by it hereunder, PRFC shall not have any liability or duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any rights pertaining to any Collateral.

Section 11. Remedies Upon Default. If any Event of Default shall have occurred and be continuing:

(a) PRFC may bring legal action or proceedings for the collection of the Obligations, and, at its option, simultaneously or thereafter foreclose any of the Mortgage(s) without first foreclosing the Lien and security interest herein created.

(b) PRFC may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein, in the Loan Agreement and in any other Loan Document, or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral) or, at its option, under any other applicable law. Without limiting the generality of the foregoing, PRFC also may (i) require the Borrower to, and the Borrower hereby agrees that it shall, at its sole expense and upon request of the Lender, forthwith assemble all or part of the Collateral as directed by PRFC and make it available to PRFC at a place to be designated by PRFC and (ii) without notice except as specified below, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Lender's offices or elsewhere, for cash, on credit or for future delivery, without assumption of any credit risk, and upon such other terms as PRFC may deem commercially reasonable. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by PRFC until the selling price is paid by the purchaser thereof, but PRFC shall not incur any liability in case of the failure of such purchaser to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may again be sold upon like notice. To the extent permitted by applicable law, in no event shall the obligations of the Borrower to PRFC be credited with any part of the proceeds of sale of any Collateral until cash payment thereof has actually been received by the Lender. The Borrower agrees that, to the extent notice of sale shall be required by law, at least ten day notice to the Borrower of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification; provided, however, that no demand, advertisement or notice, all of which are hereby expressly waived, shall be required in connection with any sale or other disposition of any part of the Collateral which threatens to decline speedily in value or which is of a type customarily sold on a recognized market. PRFC shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. To the extent permitted by law, PRFC may, without notice or publication, adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. PRFC shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, and PRFC shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at such sale, to use and apply any of the Obligations owed to PRFC as a credit on account of the purchase price payable by such Person at such sale. Each purchaser at any such sale shall acquire the property sold absolutely free from any claim or right on the part of the Borrower, and the Borrower hereby waives (to the fullest extent permitted by law) all rights of redemption, stay and/or appraisal which it now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

(c) The Lender, instead of exercising the power of sale herein conferred upon it, may proceed by a suit or suits at law or in equity to foreclose the Liens granted hereby and/or by the Mortgage(s) and sell the Collateral and/or the Mortgaged Property, or any portion thereof, under one or more judgments or decrees of a court or courts of competent jurisdiction.

(d) All cash proceeds received by PRFC in respect of any sale of, collection from, or other realization upon the Mortgage Note(s), any other Collateral or the Mortgaged Property may, in the discretion of the Lender, be held by PRFC as collateral for, and/or then or at any time thereafter be applied as set forth in the Loan Agreement. Any surplus of such cash or cash proceeds held by PRFC and remaining after payment in full of all the Obligations shall be paid over to the Borrower or to whomsoever may be lawfully entitled to receive such surplus.

(e) In the event that the proceeds of any sale, collection or realization of Collateral are insufficient to pay all amounts to which PRFC is legally entitled, the Borrower shall be liable for the deficiency, together with interest thereon at the default rate specified in the Loan Agreement as the default rate for the Note(s), and for the costs of collection and the reasonable fees of any attorneys employed by PRFC to collect such deficiency.

Section 12. Costs, Expenses and Taxes; Indemnification.

(a) The Borrower agrees to pay on demand all out-of-pocket costs and expenses incurred by PRFC in connection with the negotiation, preparation, execution, delivery, administration, modification, amendment or waiver of this Agreement and the Mortgage(s) (whether proposed or made effective) including, without limitation, the reasonable fees and expenses of counsel to the Lender. The Borrower further agrees to pay on demand all reasonable costs and expenses of PRFC(including, without limitation, reasonable outside counsel fees and expenses) in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of this Agreement and the Mortgage(s), including without limitation, reasonable counsel fees and expenses in connection with the enforcement of this Section 12.

(b) The Borrower agrees to indemnify and hold harmless PRFC and its directors, officers, employees, attorneys, agents, advisors, attorneys-in-fact, experts, affiliates, successors and assigns (each an "Indemnified Party") from and against any and all penalties, fines, expenses, losses, settlements, costs, claims, causes of action, debts, dues, sums of money, accounts, accountings, reckonings, acts, omissions, demands, liabilities, obligations, damages, actions, judgments, suits, proceeding or disbursements of any kind or nature whatsoever, known or unknown, contingent or otherwise, resulting from the Borrower's negligent acts or omissions under this Agreement, including, without limitation, attorney's and consultant's fees, investigation fees, response costs, court costs and litigation expenses.

(c) The indemnities and other agreements contained in this Section 12 are in addition to any indemnities and other agreements in any other Loan Document, but in no event shall PRFC be entitled to any duplicative payment other than with respect to any payment which PRFC is required to return.

(d) The agreements of the Borrower contained in this Section 12 shall survive the payment and performance of all of the Obligations.

Section 13. Security Interest Absolute. To the extent permitted under applicable law, all rights of PRFC hereunder and the security interest created hereunder, and all obligations of Borrower hereunder, shall be absolute and unconditional, and shall not be affected or released in any way, irrespective of:

(a) any lack of validity or enforceability of the Loan Agreement, the Note, any other Loan Document, or any other instrument relating thereto;

(b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of, or any consent to

departure from, this Agreement, the Loan Agreement, the Note or any other Loan Document, or any other agreement or instrument, including, but not limited to, any increase or decrease in any such Obligations and any amendment of any Loan Document to permit PRFC to extend further or additional credit to any Loan Party or any of their respective Affiliates in any form, including credit by way of loan, purchase of assets, guarantee, letter of credit, or otherwise, whether or not such credit shall thereupon be or become an Obligation;

(c) any taking and holding of collateral (which term for purposes of this Agreement includes but is not limited to the Collateral) or additional guaranties for all or any of the Obligations; or any amendment, alteration, exchange, substitution, transfer, enforcement, waiver or subordination of any collateral or such guaranties; or the termination, release or non-perfection of any collateral or such guaranties or any consent to departure from any security agreement or guaranty with respect thereto;

(d) any manner of application of collateral, or proceeds thereof, to all or any of the Obligations, or the manner of sale of any collateral;

(e) any consent by PRFC to (i) the change, restructuring or termination of the organizational or entity structure or existence of the Borrower or any other Loan Party, or any of their respective Affiliates, and (ii) any corresponding restructuring of, or any other restructuring or refinancing of, the Obligations or any portion thereof;

(f) any modification, compromise, settlement or release by the Lender, or, by operation of law or otherwise, collection or other liquidation of the Obligations or the liability of any Loan Party or any guarantor, or of any collateral, in whole or in part, and any refusal of payment by the Lender, in whole or in part, from any obligor or guarantor in connection with any of the Obligations, whether or not with notice to, or further assent by, or any reservation of rights against, the Borrower or any other Loan Party; or

(g) any other circumstance (including, but not limited to, any statute of limitations) that might otherwise constitute a defense available to, or a discharge of, any Loan Party or any guarantor, other than indefeasible payment in full in cash of the Obligations.

Without limiting the generality of the foregoing, the Borrower hereby consents to, and hereby agrees, that the rights of PRFC hereunder, and the liability of the Borrower hereunder, shall not be affected by any and all releases of any collateral (other than any Collateral specifically released by the Lender) from the Liens created by any Loan Document or any other agreement or instrument. This Agreement and the Lien created hereby shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Obligations is rescinded or must otherwise be returned by PRFC upon the insolvency, bankruptcy or reorganization of the Borrower or any other Loan Party or otherwise, all as though such payment had not been made.

Section 14. <u>Notices</u>. All notices and other communications provided for hereunder shall be in writing (including telecopier or cable communication) and mailed, telecopied, cabled or delivered personally or by courier, if to the Borrower, at the address therefor specified in the Loan Agreement; and if to the Lender, at the address therefor specified in the Loan Agreement; or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All such notices and communications shall be given in the manner, and shall be effective, as provided in the Loan Agreement.

Section 15. <u>Miscellaneous</u>.

(a) No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by Borrower and the Lender, and no waiver of any provision of this Agreement, and no consent to any departure by Borrower therefrom, shall be effective

unless it is in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purposes for which given.

(b) No failure on the part of PRFC to exercise, and no delay in exercising, any right hereunder, under the Loan Agreement or under any other Loan Document shall not operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of PRFC provided herein, in the Loan Agreement, in the Note and in any other Loan Document are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law. The rights of PRFC hereunder and under the Loan Agreement, the Note and any other Loan Document against any party are not conditional or contingent on any attempt by PRFC to exercise any of its rights under any other Loan Document against such party or against any other Person.

(c) Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(d) This Agreement creates a continuing Lien and security interest in the Collateral and shall (i) remain in full force and effect until the date on which PRFC has received indefeasible payment in full in cash of the Obligations, (ii) be binding upon the Borrower, its successors and assigns, and (iii) inure, together with the rights and remedies of PRFC hereunder, to the benefit of PRFC and its successors, transferees and assigns. Without limiting the generality of the foregoing clause (iii), PRFC may assign or otherwise transfer any part of the Note held by it to any other Person, and such other Person shall thereupon become vested with all of the benefits in respect thereof granted to such Person herein or otherwise.

(e) This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico. Unless otherwise defined herein or in the Loan Agreement, the terms used in Chapter 9 of the Puerto Rico Commercial Transactions Act, as amended, (the "UCC") are used herein as therein defined.

(f) In the event of any inconsistency between the terms of this Agreement or the Mortgage(s) and the terms of the Loan Agreement, the terms hereof and of the Mortgage(s) shall be controlling as necessary to create, preserve and/or maintain a valid, enforceable and perfected Lien upon the Mortgage Note(s) and the other Collateral (in the case of this Agreement) and upon the Mortgaged Property (in the case of the Mortgage), but, otherwise, the provisions of the Loan Agreement shall be controlling.

(g) THE BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

(h) ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS AGREEMENT MAY BE TRIED AND LITIGATED IN, AND THE BORROWER HEREBY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF, THE COURTS OF THE COMMONWEALTH OF PUERTO RICO AND THE FEDERAL COURT LOCATED IN SAN JUAN, PUERTO RICO, UNLESS SUCH ACTIONS OR PROCEEDINGS ARE REQUIRED TO BE BROUGHT IN ANOTHER COURT TO OBTAIN SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY. THE BORROWER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.

—ORIGINATOR OF A MORTGAGE LOAN: **Héctor M. Aponte** and her identification number of the Nationwide Multistate Licensing System (NMLS): one two four two four three four (1242434).

—MORTGAGE LENDER: Puerto Rico **Farm Credit, ACA** and its identification number of the Nationwide Multistate Licensing System (NMLS) is: five four four two nine zero (544290).

IN WITNESS WHEREOF, the Borrower has duly executed and delivered this Agreement as of the day and year first above written.

PUERTO RICO FARM CREDIT, ACA

Name: Alberto Dapena Del Valle

By:____________________
Name: **Jorge Alfonso Dulzaides Gonzalez**
Title: Authorized Officer

AFFIDAVIT NUMBER: - 14,715 -

Acknowledged and subscribed before me by **Alberto Dapena Del Valle,** of legal age, single, merchant and resident of San Juan, Puerto Rico; whom I not known personally and identified with all the requirements of article 17(c) of the Notarial Law in force, by his driver's license, with photography and signature, number 1906134; and **PUERTO RICO FARM CREDIT, ACA,** herein represented by its Authorized Officer, **Jorge Alfonso Dulzaides Gonzalez,** of legal age, married, banker and resident of Trujillo Alto, Puerto Rico; personally known to me, in San Juan, Puerto Rico, this February 12, 2021.

NOTARY PUBLIC

CARLOS TOMASSINI ... PUERTO RICO ... ABOGADO-NOTARIO

Schedule I

Mortgage Note

1) Mortgage Note in the principal amount of $181,900.00, issued in favor of Puerto Rico Farm Credit, ACA, or to its order, duly endorsed in favor of PRFC, due on demand, and with fixed interest at 5.25%, secured by a mortgage constituted pursuant to Deed Number 21, executed in San Juan, Puerto Rico, on February 12, 2021, before Notary Public, Carlos Tomassini Ramírez, ("Mortgage Note I") creating a lien over the following Mortgage Property ("Mortgage Property"): (i) Property number 1460, registered at page 154 of Volume 37 of Rio Piedras Sur, Puerto Rico.